IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHULSO MOON, JS YOON MEMORIAL CANCER RESEARCH INSTITUTE, LLC, FORECAST GENETICS, INC., FORECAST GENETICS HOLDING CO., INC., PROSPECT GENETICS, INC., PROSPECT RESEARCH, INC., and PROSPECT OPERATIONS, INC., | § § § § § § § § § § | No. 328, 2023 <br><br> Court Below—Court of Chancery of the State of Delaware <br><br> C.A. No. 12438 |
| Defendants Below, Appellants, | § § § § | |
| v. | § § | |
| PROMISE EASY LIMITED, | § § § | |
| Plaintiff Below, Appellee. | § § § | |

Submitted: April 17, 2024
Decided: June 18, 2024

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **LEGROW**, Justices.

## **ORDER**

The Court has considered the issues raised in this appeal and rules as follows:

1. In a five-count complaint, Promise East Limited filed suit in the Court of Chancery against Dr. Chulso Moon and other defendants. Promise Easy claimed that the defendants breached an investment agreement and otherwise misled Promise Easy into investing in a breast cancer diagnostic test for high-risk individuals. After

a two-day trial over Zoom, the Court of Chancery agreed with Promise Easy. The court held that what the defendants represented turned out to be a Potemkin Village. In addition to other relief, the court awarded Promise Easy almost $1.4 million plus post-judgment interest. The defendants raise several issues on appeal. We are not persuaded that the Court of Chancery's fact-finding was clearly wrong or that it made legal errors to reach the judgment in favor of the plaintiff. Thus, as explained below, we affirm.

2.     As found after trial, Dr. Chulso Moon was a Seoul National University and Johns Hopkins University educated oncologist who created the JS Yoon Memorial Cancer Research Institute ("JS Yoon") in honor of his mother, who died of breast cancer.[1] New York Global Capital ("NYG Capital" or the "Group") engages in private equity investing and business consulting services.[2] Moon gave frequent presentations on his cancer research, including to NYG Capital in January of 2015.[3]

3.     The pitch was simple. In exchange for its investment, NYG Capital would receive a stake in the proceeds from Moon's new breast cancer detection test.

---

[1] A312; A366. (Moon Dep. Tr). The court has been notified that Dr. Moon passed away sometime in April of 2024.
[2] A971 (Defendants' Opening Post-Trial Brief).
[3] A326.

2

Moon represented that this test was "95 percent effective…."[4]  Although NYG Capital decided not to invest, it found investors for Moon's research.  The research would be conducted under the entity name Prospect Genetics, Inc ("Prospect").[5]

4.      Benjamin Wey, the Group's CEO, contacted his friend Roger Li, who found the prospect enticing.  Li created Promise Easy, a Virgin Islands entity, to invest in Prospect, which was formalized in a Convertible Note Purchase Agreement (the "NPA) on May 29, 2015.[6]  Under the NPA, Prospect issued a $2 million Convertible Promissory Note to Promise Easy (the "Promissory Note" or "Note").[7]  Consistent with the Note's terms, Prospect would receive a $500,000 advance, as well as other potential, as-needed draws up to an aggregate sum of $2 million.[8]

5.      The $2 million figure arose out of a Product Timeline Budget Summary (the "Timeline") prepared by Moon and Warren Raiti ("Raiti"), the assistant general counsel to the Group who also served as Prospect's CFO.  The Timeline set forth an 18-month plan to commercialize Moon's tests at a cost of $1,986,658.  The Court of Chancery credited Wey and Raiti's testimony that the Timeline was both concrete and critical for budgetary purposes.  At the same time, the court discredited Moon's

---

[4] A942 (Benjamin Wey Cross-Examination Tr.).  Moon recalled things differently, but the Court of Chancery determined his recollection "is not the most reliable one." *Promise Easy Ltd. v. Moon*, 2023 WL 5152173, at *2 (Del. Ch. Aug. 10, 2023).
[5] And related sub-entities Prospect Research, Inc. and Prospect Operations, Inc.  A364.
[6] A190; A946.
[7] A445.
[8] A446.

claim "that the numbers he supplied for the Product Timeline were unattainable 'bare bones' estimates that assumed a best-case scenario without any hiccups[.]"[9]

6.    The transaction closed on June 1, 2015. Moon was named CEO, Raiti became CFO, and nine days later Promise Easy distributed $500,000 to Prospect's bank account. Shortly after the ink dried and the cash cleared, things went sideways. Less than a year later, Promise Easy would bring this action in the Court of Chancery.

7.    The Product Timeline required Moon to establish monitored research locations known as IRB sites, sign a contract with Total CRO Clinical Trial Management to develop these sites, lease space to freeze and store samples, hire a lab technician, contract with AI Biotech within a month to extract and sequence DNA from existing samples, and retain counsel to submit a new patent application.[10] Moon failed to complete the first three tasks, which fell to Raiti.[11] Meanwhile, Wey, who had not invested in the venture, was embroiled in a sexual harassment scandal,

---

[9] Promise Easy Ltd. v. Moon at *5.
[10] A59; A884; A833; A751; A603; A497.
[11] A608.

which Moon claimed caused his delay.[12]  These concerns went "into overdrive" when Wey was indicted for securities fraud, wire fraud, and money laundering.[13]

8.     Raiti became increasingly agitated as Moon went "on a 'break' between April and September 2015."[14]  During that period, Moon worked only 20-30% of his normal hours, communicated poorly, and continued to receive his $20,000 monthly compensation.[15]  Three months into the venture, the only milestone Moon met was his obligation to contact the same patent counsel he had already retained for JS Yoon.[16]  At that point, the IRB sites were supposed to be operational.  But they did not exist, "nor would they ever[.]"[17]  Moon did not procure lab space or hire lab technicians.

9.     On October 5, 2015, Moon requested an advance of an additional $498,175 from Promise Easy.  Of the requested funds, $349,425 "related to milestones that were supposed to be completed in the project's first four months."[18]  The venture was in its fifth month.  Li was dismayed and began to contemplate suit.  Raiti denied the request for additional funds and resigned as CFO.  In response to that denial, Prospect sent Promise Easy a Notice of Purchaser Default on October

---

[12] A854.
[13] The Department of Justice dismissed these charges.  *Promise Easy Ltd. v. Moon* at *11.
[14] A774.
[15] Promise Easy Ltd. v. Moon at *10.
[16] A756.
[17] Promise Easy Ltd. v. Moon at *10.
[18] *Id.* at *11.

30, 2015. In response, Moon refiled a patent under his own name that he had previously transferred to Prospect. Promise Easy, in turn, sent notice to Prospect that it was in breach of the NPA.

10. Promise Easy filed its complaint against the defendants on June 9, 2016, and asserted five counts. First, Promise Easy alleged that Moon, Prospect, and Forecast Genetics violated the Delaware Securities Act ("DSA") by misrepresenting the Product Timeline, which induced Promise Easy into entering the NPA.[19] Second, Promise Easy sought a declaratory judgment that Moon, JS Yoon, and Prospect must indemnify Promise Easy for the Initial Advance and any losses incurred thereafter, and also assign Promise Easy its rights under the Patent License Agreement, because Prospect breached the Transaction Documents.[20] Third, Promise Easy alleged that Moon breached the Consulting Agreement.[21] Fourth, Promise Easy alleged that Moon and Prospect requested the additional advancement of funds in bad faith, thus breaching the implied covenant of good faith and fair dealing.[22] And fifth, Promise

---

[19] *Id.* at *13.
[20] Id.
[21] Id.
[22] Id.

Easy alleged that it was fraudulently induced to enter into the NPA by Moon's material misrepresentations of Product Timeline inputs.[23]

11.     After a two-day trial, the Court of Chancery found in favor of Promise Easy on all but Count IV.  The court set forth its DSA analysis in two thorough sections.     It concluded that "Promise Easy's reliance on Dr. Moon's misrepresentations proximately caused it to enter into the failed investment" and that the defendants' arguments to the contrary were "specious[.]"[24]  The court reached the same conclusion as to fraudulent inducement.  Because Moon "provided the false inputs behind the Product Timeline while knowing that the estimates were unattainable[,]" and Promise Easy justifiably relied on those inputs in a damaging investment, Promise Easy was entitled to relief.[25]  The court also found that the defendants' violations of "myriad provisions in the Transaction Documents" entitled Promise Easy to declaratory relief.[26]    Moon also breached the Consulting Agreement, as he "did not definitively complete any tasks within the Product Timeline."[27]  But Moon's request for an additional disbursement was not in bad faith, the court held, as "Promise Easy failed to show that the request was so unrelated to legitimate needs of the project as to violate the implied covenant of good faith and

---

[23] The defendants filed counterclaims but dropped them before post-trial briefing.
[24] Promise Easy Ltd. v. Moon at *16.
[25] *Id.* at *21.
[26] *Id.* at *18.
[27] *Id.* at *19.

fair dealing."[28]  Overall, the court awarded Promise Easy compensatory damages, including the return of Promise Easy's initial advance, costs, interests, and attorney fees, as well as declaratory relief, "including enforcing its right to indemnification under the NPA."[29]

12.     The defendants have raised five issues on appeal.  They describe the issues as primarily legal in nature.  Our review, however, shows that they are, with limited exceptions, essentially disputes with the court's factual findings.  We review legal error *de novo* and overturn the court's factual determinations only if they are clearly wrong.[30]

13.     First, the defendants argue that the Promissory Note was not a security covered by the DSA.  But the Court of Chancery concluded correctly that the Note is just that.  "The Delaware Securities Act authorizes a private cause of action for the purchaser of a security against the seller if the seller makes an untrue statement or omission regarding the security."[31]  The DSA applies to "any note" "unless the

---

[28] *Id.* at *20.
[29] *Id.* at *21.
[30] *Coster v. UIP Cos., Inc.*, 300 A.3d 656, 663 (Del. 2023); *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).
[31] *Promise Easy Ltd. v. Moon* at *14, citing 6 *Del. C.* § 73-605(a)(2) ("Any person who: . . . Offers . . . a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading (the buyer . . . not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying . . . the security from . . . him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with the interest at the legal rate from the date of payment costs, and

8

context otherwise requires."[32]  In dispute here is a "10% Convertible Promissory Note."

14.    The defendants bear the burden of proving that the Note is not covered by the DSA.  They argue that contextual evidence demonstrates that the Note was not a security.  They cite as examples "Wey's shared personal interest in breast cancer research, . . . bargained-for protections in the form of several seats on the Company's board of directors and the appointment of a CFO of its choosing, and the note being in the form of a line of credit."[33]  But contrary to Moon's claim that the court "provide[d] scarce, if any, insight into the deductive process it applied[,]" the issue received more than adequate treatment.

15.    In *Reves v. Ernst & Young*, we set forth the test to determine whether a note should be exempt from the DSA.  A note is exempt if it does not (1) fit into one of seven enumerated categories, or (2) resemble instruments that do.[34]  The defendants only argued for the latter exception, so the Court of Chancery's analysis

---

reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.").

[32] 6 *Del. C.* § 73-103(a)(23).

[33] Appellants' Opening Brief (known hereinafter as "Opening Br.") at 15.

[34] The seven types of notes that are exempted are "(1) a note delivered in consumer financing, (2) a note secured by a mortgage on a home, (3) a short-term note secured by a lien on a small business or some of its assets, (4) a note evidencing a character loan to a bank customer, (5) a short-term note secured by an assignment of accounts receivable, (6) a note which simply formalizes an open-account debt incurred in the ordinary course of business and (7) notes evidencing loans by commercial banks for current operations." *State v. Attarian*, 2014 WL 4782859, at *2 (Del. Super. Ct. Sept. 8, 2014).

was limited to the "family resemblance" factors. Those four factors are as follows: "(1) the motivations of the parties to enter into the note (whether they were for investment purposes); (2) the note's plan of distribution (whether it was for common trading); (3) the reasonable expectations of the investing public (that such was an investment); and (4) whether there is other non-Securities Act protection available to the alleged victims."[35] Here, all four factors support the court's conclusion that this Note was a security covered by the DSA.

16. For the first factor, the Note was issued in pursuit of profit. For the third, a financial return was Promise Easy's reasonable expectation. It may be true that Moon, Wey, Raiti, and every other individual involved cared about breast cancer research. But this Note was not a charitable gift; it reflected Promise Easy's demonstrable profit motive. The court credited Wey's testimony that Moon projected $2 billion worth of upside from his research. The first and third factors suggest the Note is a security.

17. The court was equally correct that the second and fourth factors support its conclusion. The Note was transferable. The Transfer Restriction defendants rely upon is a boilerplate legend that simply requires any transfer of the Note to comply with the securities laws. And it is of no import that Promise Easy's leadership team was sophisticated. The presence of non-Securities Act protection for alleged victims

---

[35] *Id.*

10

hinges on our legal scheme, not the relative knowledge of individuals tasked with running an investment vehicle. The DSA is the protection our General Assembly implemented for situations like this one.

18. Next, the defendants argue that Promise Easy never met its burden of proving the six elements required for a DSA claim.[36] The defendants' argument is twofold. First, the defendants contend that the court put too much stock in "the incorrect statement that 'Moon testified that these goals never were actually achievable.'" Second, the defendants claim that the court improperly weighed Wey's testimony.

19. For the first argument, Prospect creates a distinction without a difference. It is correct that Moon never explicitly testified that the project could not be completed on time. But it would require an exceedingly unrealistic reading of his testimony to conclude that Moon had any faith that the figures provided to Raiti were realistic.[37] Moon knew they were inaccurate and signed off on them anyway. The court credited Raiti's testimony that he relied on the timeline milestones. And

---

[36] The defendant must have "(1) made a misstatement or omission (2) of material fact (3) with scienter (4) in connection with a purchase or sale of a security (5) upon which the plaintiff . . . relied and (6) that reliance proximately caused the plaintiff's (or other person's) injury." *Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345, 349 (Del. 1993).
[37] A727- A731.

accepting Raiti's reliance as real, those representations are material. Moon passed along material information he did not believe to be true.

20. For the second, it is undisputed that we give the trial court "great deference" in assessing the credibility of conflicting witness accounts.[38] Moon argues only that, because of Wey's potentially problematic personal life, this usual deference would be inappropriate. But the court employed an orderly and logical process to conclude that Wey's testimony was credible. There is no rule by which this Court affords our trial courts less deference as their task becomes more difficult. The clear error standard of review applies.[39] There was no clear error here.

21. The defendants argue next that Prospect could not complete its tasks in accordance with the Product Timeline because Promise Easy refused to furnish further funds after only three months. As the defendants see it, the Court of Chancery's conclusion was "largely based on the fallacy that, in order not to be in breach of the Consulting Agreement, Dr. Moon would have . . . had to undertake and finish" his responsibilities before Promise Easy terminated the NPA.[40]

22. But the court said no such thing. Instead, it held Moon accountable for not meeting the milestones that should have been completed well before Promise

---

[38] *Adams v. Jankouskas*, 453 A.2d 148, 151 (Del. 1982).
[39] *Olson v. Halvorsen*, 986 A.2d 1150, 1157 (Del. 2009).
[40] Opening Br. at 25.

12

Easy terminated the NPA.[41] The court evaluated contradictory witness accounts and made reasonable credibility determinations. Upon doing so, the court compared what was promised with what was delivered and found a major discrepancy. There was no error in that process.[42] The defendants' quarrels with the court's findings of fact are not legal mistakes. And it was not up to the court to examine witnesses to create a trial record.[43]

23.    Finally, Promise Easy met its burden of proving the six elements required to support a fraudulent inducement claim under the DSA. Speculative conclusions about Promise Easy's purported shortcomings, which the court concluded were factually unfounded, do not contribute to the mix of relevant considerations as to how Moon's fraudulent inducement harmed Promise Easy. This court will not revisit the Court of Chancery's factual findings based on the unreasonable assumption that Promise Easy would intend to hurt itself financially without any clear incentive to do so.

24.    In summary, the Court of Chancery did not err when it concluded that: the Note was a security covered by the DSA, Promise Easy proved the elements of

---

[41] *Promise Easy Ltd. v. Moon* at *19.
[42] Indeed, that same analysis proves conclusive as to whether Moon breached the Consulting Agreement, which the court correctly answered in the affirmative.
[43] For instance, it is not the Court of Chancery's responsibility to ensure Moon was "questioned [about] what taking [his] break entailed" by Promise Easy's counsel. Opening Br. at 24.

both a DSA claim and fraudulent inducement, Moon breached the Consulting Agreement, and frustration of purpose does not excuse his failings.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is affirmed.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice